C. L. BETTERTON ET AL. v. E. EPPSTEIN ET AL.

No. 3080.

1. **Sale of Perishable Property in Custodia Legis.**—The statutes of this State empower a court or the judge of a court from which an attachment issues to order the sale of personal property seized under such a writ "when it shall be made to appear that such property is in danger of serious and immediate waste or decay, or that the keeping of the same until the trial will necessarily be attended with such expense or deterioration in value as greatly to lessen the amount to be realized therefrom." Rev. Stats., art. 171. The mode of procedure provides that the money from such sales be paid into court. Arts. 172, 173, 174.

2. **Same—Such Sales Pass Title to the Property.**—A sale of personal property seized under attachment, made because perishable, etc., pending the litigation, under order of court or of the judge having power under the statute to make such order, will pass title to such property free from prior liens.

3. **Same—Proceeds, etc.**—The proceeds of such sales returned into court take the place of the property and may be subjected to payment of prior liens.

APPEAL from Rockwall.    Tried below before Hon. Anson Rainey.

This is a suit under the statute to try the right of property to certain goods, wares, and merchandise, between E. Eppstein & Co. and C. L. Betterton & Co.; the plaintiffs, E. Eppstein & Co., claiming that they had a landlord's lien on the goods for rent due, and C. L. Betterton & Co. claiming that they were the owners of the goods, having purchased and paid for them under an order of sale, made because they were perishable, by the District Court of Rockwall County, and that therefore they held the goods discharged of the landlord's lien.

On November 29, 1888, R. H. Stephenson rented two houses from E. Eppstein & Co., and on that date entered into a rental contract, to expire September 1, 1891, by which he bound himself to pay for one house $480 per year, and the other $300 per year, payment of $40 per month for one and $25 per month for the other to be made on the first of each month.

A few days after the execution of this lease Stephenson, who had goods in the houses, failed, and a number of attachments were levied on the goods, and upon the application of the attaching creditor the court ordered the goods sold as perishable goods, at which sale, which occurred December 22, 1888, C. L. Betterton, became the purchaser at $2175, which money was paid into court, and on the same day possession of the goods was delivered to C. L. Betterton.

On the same day, and after Betterton took possession of the goods, the plaintiffs, E. Eppstein & Co., sued out a distress warrant, which was levied on the goods for the rent due for the whole time, which by the rental contract they were authorized to do under certain circumstances, whereupon Betterton made claimant's oath and filed bond, and the cause was tried and judgment rendered against Betterton and the obligors on his bond for the sum of $2140 and foreclosing the landlord's lien on the goods.

Motions for new trial were overruled and Betterton appealed.

Other facts are given in the opinion.

*Brown, Hall & Freeman* and *Wade & Stroud*, for appellants. — 1. Where property is in the custody of the court, and the court becomes satisfied that it is perishable, it has the power to order its sale, and the sale so made is in the interest of all parties having liens or an interest of any kind in the property, and all parties so interested are therefore bound by the sale.

2.    A sale of perishable property by order of the court is a conservative act, and is done not to destroy but to preserve the interests of all parties, and the interest or claim that each party may have in and to the property so sold is by operation of law transferred by the sale from the thing sold to the proceeds of the sale.

3.    The sale of property by a court, being made without the consent of

the owner or lien holder and being made on the ground that the property is perishable, is the exercise of a power inherent in the court arising from the law of necessity, and is in this respect somewhat analogous to sale *in rem,* and all lien holders or claimants are bound by such sale, their rights thereafter being in the money realized from the sale, while the purchaser takes a title free from all liens and clear of all claims or encumbrances. Sullivan v. Cleveland, 62 Texas, 677; Drake on Att., 300; Waples on Att., 295, 296; Wade on Att., 27, 136; Young v. Keller, 7 S. W. Rep., 293; Dock Co. v. Ellery. 12 N. J. Eq., 94; Jennings v. Carson, 4 Cranch, 2; Foster v. Cockburn, Parker, 70; Grant v. McLachlin, 4 Johns, 34; Taylor v. Carrol, 20 How., 583; McGee v. Burns, 39 Pa. St., 50; Griffith v. Fowler, 18 Vt., 390; Swead v. Wigman, 27 Mo., 176; Connor v. Long, 14 Otto, 228, 244.

*Mathews, Neyland & Neyland,* for appellees.— 1. The landlord's lien provided for in articles 3107, 3122, and 3122b, Revised Statutes, exists by force of the statute, independent of the levy of compulsory process, and attaches to any property owned by the tenant and placed in a store house or other building rented, so long as the tenant continues his occupancy and for one month thereafter, except as to such property as may be relieved from the operation of such lien by the terms of the law. And the fact that a plain enactment of the Legislature may tend to restrain trade, or in any other manner operate harshly, affords no reason why the judiciary should exercise a power not conferred by the Constitution and defeat the legislative enactment by construction.

2. Appellees were not compelled to intervene in the suit wherein said goods had been attached, and by order of the court sold and bought in by C. L. Betterton, in order to have their rights adjusted. They were not parties to that suit, and their right to have the property subjected to their claim was not affected by the proceedings had in that cause; and C. L. Betterton having bought the merchandise of the tenant of appellees stored on the rented premises, with notice of appellees' claim for rents and that they intended to preserve said lien on said property, took said merchandise encumbered with appellees' lien. Meyer, Weis & Co. v. Oliver & Griggs, 61 Texas, 584; Wilkes v. Adler, 68 Texas, 690; Davis v. Goldberg & Smith, 75 Texas, 49; Wade on Att., secs. 136, 137.

3. Mortgaged chattels in the hands of a mortgagor are liable to seizure and sale under the attachment laws for the debts of such mortgagor; so also are chattels belonging to a tenant stored on rented premises liable to seizure and sale to satisfy the debts of such tenant to others, and in either case such forced sale conveys title subject to the mortgage or landlord's prior lien.

STAYTON, CHIEF JUSTICE.—The property in controversy was seized

under attachments issued against R. H. Stephenson, and while in custody of the sheriff was ordered to be sold as perishable property by the judge from whose court the writs issued.

The property consisted of a stock of goods, and under the order referred to these were sold by the sheriff on December 22, 1888, and at that sale C. L. Betterton became the purchaser, paid the amount of his bid, and received the property.

At that sale a member of the appellee firm was present, bidding for the goods, and he then gave notice of the claim of lien on which his firm now relies.

The money paid by Betterton was paid into court.

On November 29, 1888, Stephenson rented from appellees certain store houses, in which the goods were when seized under attachments. The rental contract was by its terms to extend from date to September 1, 1891; under it Stephenson was to pay $480 per annum for one house and $300 per annum for the other, the rent to be paid monthly in advance at the rate of $40 for one and $25 for the other. It was further stipulated in the contract that plaintiffs might declare all of the rent due for the whole term on the failure of Stephenson to pay either one of the monthly installments.

Stephenson failed to pay the monthly rent in advance, and on the day Betterton purchased the goods, but after he had paid for them and been put in possession, appellees sued out a distress warrant, which they caused to be levied on the goods to secure rent for the entire term.

Their landlord's lien was subsequently established in the District Court, where judgment was rendered against Stephenson for $2140, with foreclosure of lien, subject to any right Betterton might have under his purchase.

When the distress warrant was levied Betterton made his claim under the statute to try the right of property, which is the case now before us, and on final hearing it was adjudged that the property in his hands was subject to sale to satisfy the sum due appellees by Stephenson.

No question is raised as to the entire regularity of the proceedings under which Betterton claims, but several questions are presented bearing on the right of appellees to subject the property to sale in satisfaction of their judgment.

Under the view taken of the case, however, it will only be necessary to consider one question, which is, did Betterton acquire title to the property by his purchase, freed from the claims of all other persons, even to subject it to the payment of a debt secured by lien prior to that under which he purchased?

The statutes of this State empower a court or the judge of a court from which attachment issues to order the sale of personal property seized under such a writ " when it shall be made to appear that such property is in

danger of serious and immediate waste or decay or that the keeping of the same until the trial will necessarily be attended with such expense or deterioration in value as greatly to lessen the amount likely to be realized therefrom." Rev. Stats., art. 171.

They prescribe the procedure and require the proceeds to be paid into court within five days after the sale is made. Rev. Stats., arts 172, 173, 174.

If the property had been sold under final process after judgments in the attachment suits for the purpose of satisfying them, there is no doubt that the sales would have been subject to the liens of any persons superior and prior to the liens acquired by attachment.

It is not believed, however, that the same rule applies when personal property, perishable in its nature, is sold pending litigation under order of court or of a judge having power under a statute to make 'such an order; for such sales are made for the conservation of the rights or interests of every person owning or having claim upon the property which might be lost pending litigation from natural decay, waste, or deterioration in value.

By the seizure under the attachment the custody of the property became that of the State, or as it is sometimes expressed, the custody of the law; and as a legal custodian it had the power to do whatever was necessary to preserve the property, which in law is the value of the thing, even though to do so it became necessary to change its form from goods to money.

A recent writer has well said that "The sale of perishable property by order of court, before any condemnation of it or before any merging of an attachment lien with a judgment lien, may be made without publication notice to an absent defendant. Such a sale always rests upon necessity for its justification. * * * Admitting the necessity in any case, the want of notice to the owner would not render invalid the title acquired by the purchaser at the sale. * * * It is not an exceptional judgment divesting the owner of his rights, for he owns the proceeds after his perishable property has been converted into cash. The thing sold would have perished had it not been sold. The purchaser has obtained the title the former owner had, but not by virtue of an attachment judgment against the property. * * * The court's right to sell is for the preservation of the property by changing it from its perishable condition to money, which remains in custody as its substitute. There is no hearing and determining the question of the validity of the plaintiff's claim nor of the liability of the property attached. There is no exercise of jurisdiction in the sense in which jurisdiction is exercised when there is final judgment in the case." Waples on Att., 317.

While title to property is not divested by the levy of attachment upon it, nor jurisdiction thereby conferred on a court, without such notice as the law requires to be given to render a judgment final in its nature, sub-

jecting the property to sale for its satisfaction, yet "special circumstances, as the perishable nature of the goods, may warrant the court in ordering a sale prior to the judgment, still the rule remains unaffected even by an exception.   The property (attached) being in *custodia legis* to abide the result of the suit, without change of ownership, the application for the order of sale is a duty owing to the defendant, and the order is made to protect the property from diminution or deterioration.   Although the purchaser takes a perfect title to the perishable article, the title of the defendant immediately attaches to the money realized at the sale, still, however, subject to the lien."   1 Wade on Att., 27.

It is said by other authors that "It should, however, be remembered that from the moment a court of competent jurisdiction assumes the control or custody of a particular thing, its acts verge on the nature of proceedings *in rem*, and should be held to have that character whenever it is necessary for the protection of the property itself or of the parties to the proceeding.   Thus an order for the sale of goods seized under an attachment as perishable will pass a good title to the purchaser, free from all defects in that of the garnishee or defendant."   2 Smith's Lead. Cases, 695.

Such was held to be the law in the following cases:   Taylor v. Carlyle, 24 Pa. St., 267; Magee v. Beirne, 39 Pa. St., 50: Young v. Kellar, 94 Mo., 592.

In these cases the authorities are fully stated and commented upon, and we fully concur in the conclusions which they reach, and any other rule applied to the sale of perishable property under such circumstances would defeat the purpose which alone justifies its sale pending litigation.

The power of a State to authorize such sales can not be denied, and when this is given it must be presumed that it was thereby intended to confer the greatest attainable benefit practicable upon all persons having right to or interest in the thing to be sold, whether such person be the owner of the thing or only claiming a lien upon it.

To confer such benefit, purchasers must understand that through the sale they will acquire title, for otherwise sacrifice of property will necessarily result from its seizure.

If property which from its nature must in a few hours or days become valueless unless consumed be seized and directed to be sold because it is perishable, who would buy at anything like a fair price if he may not rely upon acquiring title by his purchase and thus have the right to consume or resell?

A sale with any other understanding would be ruinous to the owner or persons having claim or lien upon the property.   The result would be that no sale could be made and the property perish in the custody of the law, or it would sell at a grossly inadequate price.

Take the case of the sale of a stock of goods, as was that in this case, consisting of many articles, each of which may be sold to different persons; would it be reasonable to hold that in a sale made for the sole purpose of

conservation it was ever contemplated that the owner of the goods should or might follow them into the hands of hundreds of persons who might purchase at such a sale? We think not, but hold when such a sale is made that the proceeds of sale paid into court represent the property sold, to which all persons may and to which some persons must look for satisfaction of claim to or upon the thing sold, because that has passed to the purchaser freed from all claim if the sale was made in accordance with the law authorizing it.

The validity and effect of this class of sales does not depend upon the question whether the sale is made by a court acting through its officers or by a private person, for the act is one in a sense ministerial, based on necessity, and valid when made in obedience to a law directing such a sale to be made for the conservation of property.

Many instances of such sales are referred to in the cases cited in which, under the statutes in force in this State, title to property would pass to the purchaser at such sales freed from the claims of all persons.

In this case it does not become necessary to consider what all the remedies may be for a person whose property has been seized and sold as perishable in a cause to which he is or is not a party; but it is evident that he could claim the proceeds if not subject to the payment of the debt sought to be collected, and such other relief as might be necessary to indemnify him if the proceeds of sale were not.

In the case before us, however, the goods seized were the property of the common debtor; they were sold and the proceeds paid into court, through a proceeding authorized by the statute not claimed to have been in any respect irregular, and to that fund, which was ample, appellees should have looked.

Their lien on the property sold was destroyed by the sale, but vested in its proceeds; hence appellant took title to the property not subject to the lien on it which appellees are now seeking to enforce.

In Sullivan & Co. v. Cleveland, 62 Texas, 677, the right of a landlord to intervene and have priority over attachment creditors of the tenant to payment of sum due as rent out of a sum paid into court on sale made of the attached property as perishable was recognized. This could not have been on any other ground than that the seizure under attachment and subsequent sale divested the landlord's lien on the goods sold, and that this attached to the proceeds paid into court.

This was practically the holding in the case of Ghio v. Schutt & Evers, decided at the present term (*ante*, 375), the only difference in the cases being that in the case referred to the writs of attachment and distress warrant had been levied and the latter returned into the court from which the attachment issued before the sale was ordered.

The case of Meyer, Weis & Co. v. Oliver & Griggs, 61 Texas, 584, is relied upon as authority in support of the judgment rendered in this case.

It does not appear in the report of that case that the question involved in this was raised or considered, or that facts existed on which the question could have been raised.

Whether the goods were sold pending litigation as perishable property, or under process issued after final judgment to enforce attachment lien, does not appear.

If they were sold under the latter, under all the authorities, the purchasers bought subject to the lien prior and superior to that given by attachment, but if bought under the former the purchasers took title free from all claim.

These views lead to a reversal of the judgment of the court below, and it will be reversed and here rendered in favor of appellants.

*Reversed and rendered.*

Delivered November 28, 1890.